IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GERALD REVIELLO | : | CIVIL ACTION |
| | : | NO. 12-508 |
| v. | : | |
| | : | |
| PHILADELPHIA FEDERAL CREDIT | : | |
| UNION | : | |

O'NEILL, J.                                                                                        June 14, 2012

### MEMORANDUM

Plaintiff filed his complaint on January 31, 2012 seeking damages, attorney's fees and costs and other relief pursuant to the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.  Defendant has filed a motion to dismiss.[1]  Also before me are plaintiff's response to the motion and defendant's reply.[2]  For the reasons that follow, I will dismiss plaintiff's EFTA claim without leave to amend and plaintiff's ADA claim with leave to amend.

### BACKGROUND

Plaintiff used defendant's ATM on January 31, 2011 and was charged a two dollar fee. Compl. ¶¶ 16-17.  He brings two claims based on this transaction.  First, plaintiff alleges that the fee was assessed in violation of the EFTA which requires that an ATM operator provide notice to consumers before imposing a usage fee.  Id. ¶¶ 41-43.  Second, plaintiff, who asserts that he is "sight-impaired but not legally blind," Id. ¶ 53, alleges that the notice provided failed to

---

[1]        Although defendant's motion to dismiss refers to plaintiff's "amended complaint," no amended complaint has been filed and I will treat the motion as a motion to dismiss the original complaint.

[2]        Plaintiff has also filed a motion to strike certain allegations regarding plaintiff's other lawsuits in defendant's motion to dismiss.  Dkt. No. 12.  I have not considered those allegations in determining the outcome of the motion to dismiss and will therefore deny plaintiff's motion to strike as moot.

adequately inform him of the usage fee and he was denied equal enjoyment of the services of

defendant's ATM in violation of the ADA, as he was unable to make the same informed decision

as a sighted person.  Id. ¶¶ 56-57.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action

for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed

factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual

allegations must be enough to raise a right to relief above the speculative level on the assumption

that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations

omitted).  The complaint must state "'enough facts to raise a reasonable expectation that

discovery will reveal evidence of' the necessary element."  Wilkerson v. New Media Tech.

Charter Sch. Inc., 522 F.3d 315, 321 (3d Cir. 2008), quoting Twombly, 550 U.S. at 556.  The

Court of Appeals has made clear that after Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009),

"conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss: 'threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to

show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d

Cir. 2009), quoting Iqbal, 129 S. Ct. at 1949.  The Court also set forth a two part-analysis for

reviewing motions to dismiss in light of Twombly and Iqbal: "First, the factual and legal

elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'"  Id. at 210-11, quoting Iqbal, 129 S. Ct. at 1950.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts."  Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008).  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  Iqbal, 129 S. Ct. at 1949.

**DISCUSSION**

**I.    EFTA Claim**[3]

Plaintiff's EFTA claim cannot withstand defendant's motion to dismiss because defendant provided plaintiff with all the notice of the two-dollar fee that was required under the EFTA.

The EFTA provides that "any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer [is required] to provide notice in accordance with subparagraph (B) . . . ."  15 U.S.C. § 1693b(d)(3)(A).  Subparagraph B requires that (I) the notice "shall be posted in a prominent and conspicuous location on or at the

---

[3]        Defendant contends that plaintiff's EFTA claim is time-barred because his complaint was filed on February 13, 2012, after the one-year statute of limitations period expired.  Def.'s Mot. to Dismiss at 4.  I accept plaintiff's representation that he supplied the Court with a copy of his complaint with plaintiff's *in forma pauperis* petition on January 31, 2012, prior to the expiration of the statute of limitations. Dkt. No. 15 at ECF p. 5.  "Filing an *in forma pauperis* petition . . . with an accompanying complaint amounts to a commencement of an action against those parties named in the complaint even though the complaint cannot technically be filed with the Clerk of Court until the court has granted plaintiff leave to proceed *in forma pauperis*." Mack v. Salarna, 684 F. Supp. 865, 866 (E.D. Pa. 1988).  Therefore, plaintiff's EFTA claim is timely.

automated teller machine at which the electronic transfer is initiated by the consumer" and (ii)
the notice must "appear on the screen of the automated teller machine, or on a paper notice
issued from the machine . . . ." 15 U.S.C. § 1693b(d)(3)(B).  Further, subparagraph C provides
that an ATM may not impose fees unless "(I) the consumer receives such notice in accordance
with subparagraph (B); and (ii) the consumer elects to continue in the manner necessary to effect
the transaction after receiving such notice." 15 U.S.C. § 1693b(d)(3)(C).  Section 205.16(b) of
the EFTA's implementing regulations requires that ATMs that impose a fee provide notice and
disclose the amount of the fee.  12 C.F.R. § 205.16(b).  Subsection (c)(1) explains that the on-
machine notice must be posted "in a prominent and conspicuous location on or at the automated
teller machine . . . ." 12 C.F.R. § 205.16(c)(1).

　　　　Thus, the EFTA and its implementing regulations require  that an ATM which imposes a
fee must provide both on-screen and on-machine notice.  15 U.S.C. § 1693b(d)(3); 12 C.F.R. §
205.16.  Plaintiff alleges that the defendant's ATM violated the EFTA because it did not provide
the required fee notice.  Compl. ¶¶ 41-43.  Plaintiff's complaint, however, does not allege that he
was not provided the required on-screen notice.  He appears to concede that such notice was
given when he refers to "[t]he use of computer screen text as the sole notice of a usage fee . . . ."
Compl. ¶ 52.  In addition, plaintiff does not assert that there was no on-machine notice.  In fact,
the exhibits attached to his complaint show that some form of notice was located on the machine.
Compl. Ex. to Compl. at ECF p. 22.  The on-machine notice was located on the front of the ATM
and reads as follows:

　　　　　　Please be advised that you may be assessed the following fees:
　　　　　　•　　　$0.50 fee, per inquiry transaction, if you are a PFCU

member.

- $1.50 surcharge fee for cash withdrawals, if you are a non-member of PFCU.  This fee is in addition to the amount of your withdrawal and any fee that may be assessed by your financial institution.

Def.'s Mot. to Dismiss at 7; see also Compl. Ex. at ECF p. 22.  Plaintiff's claim is that the on-machine notice that was provided was insufficient to satisfy the requirements of the EFTA. Compl. ¶ 19.

I find that plaintiff's claim cannot withstand defendant's motion to dismiss because the on-machine notice provided complies with the requirements set forth in the EFTA.  Neither the statute nor the implementing regulation "sets forth any specific requirements regarding the size, features, or other attributes of the notice."  Drager v. Bridgeview Bank, No. 1:10–cv–7585, 2011 WL 2415244, at *7 (N.D. Ill. June 13, 2011).  Instead, they require only that the on-machine notice be placed in a prominent and conspicuous location.  15 U.S.C. § 1693b(d)(3)(B); 12 C.F.R. § 205.16(c)(1).[4]

The majority of plaintiffs who have brought claims under the on-machine notice provision of the EFTA have based their allegations on a complete lack of on-machine notice.  In some cases, the machine never had the required notice.  See Pfeffer v. HSA Retail, Inc., No. SA-11-CV-959-XR, 2012 WL 280740 (W.D. Tex. Jan. 31, 2012) (holding that the plaintiff properly stated a claim for relief under the EFTA by alleging that there was no on-machine notice); Boecherer v. Burling Bank, No. 08 C 1332, 2009 WL 4544695 (N.D. Ill. Dec. 1, 2009)

---

[4]    The EFTA, unlike the ADA, does not set forth a requirement that all ATM users be given an equal opportunity to perceive the required notice.  Thus plaintiff's alleged visual disability is not relevant to whether the on-machine notice was sufficient under the EFTA.

5

(precluding summary judgment on plaintiff's EFTA claim because the bank had not provided any on-machine notice). In others, the notice had been removed by a third party. <u>See</u> <u>Bartashnik v.</u> <u>Bridgeview Bancorp, Inc.</u>, No. 05 C 2731, 2005 WL 3470315 (N.D. Ill. Dec. 15, 2005) (noting that when the on-machine notice is removed or damaged by a third party, the bank may claim an affirmative defense under the EFTA); <u>Ramsey v. Cardtronics USA, Inc.</u>, No. 11-CV-1511, 2012 WL 1674252 (S.D. Cal. May 11, 2012) (holding that the safe harbor defense shielded the bank from liability under the EFTA because the on-machine notice was removed by a third party).

In fact, the parties have identified only one case in which a court has interpreted the "prominent and conspicuous location" requirement. In <u>Mohler v. Manufacturers and Traders</u> <u>Trust Co.</u>, No. CIV JFM-05-1070, 2006 WL 901639 (D. Md. Mar. 24, 2006), the Court rejected the plaintiff's claim that the on-machine fee notice failed to satisfy the statutory requirement. The on-machine notice was placed on a nine-inch by twenty-two-inch disclosure panel which was located seven inches from the ATM. <u>Id.</u> at *1. In finding that this notice was sufficient, the Court reasoned, "the size and location of defendant's disclosure panel render it, and the fee notice posted on it, sufficiently conspicuous to draw the attention of any reasonable person approaching the ATM by car or on foot." <u>Id.</u>

This case differs from <u>Mohler</u> in that the disclosure panel at issue is alleged to be less than two inches square. Pl.'s Answer to Mot. to Dismiss at ECF p. 1. At the same time, however, the notice provided by defendant is arguably more "prominent and conspicuous" than that provided by the ATM operator in <u>Mohler</u> because the notice was placed on the ATM itself. Dkt. No. 3 at ECF p. 22. Absent statutory or regulatory guidelines requiring a different or more specific type of notice, I decline to find that plaintiff has made a plausible claim that the notice

on the ATM in question is insufficient under the EFTA.  Plaintiff has not stated a claim under the EFTA because the information set forth in his complaint demonstrates that defendant's ATM complied with the statutory and regulatory notice requirements.  I will dismiss plaintiff's EFTA claim.  Further, given that neither the statute nor the regulations mandate that the notice comply with specific size requirements, I find that amendment would be futile.

**II.     ADA Claim**

Plaintiff's ADA claim cannot withstand defendant's motion to dismiss because his allegations are insufficient to establish that he has standing.  Further, even if plaintiff's allegations were sufficient to establish standing, they are not sufficient to set forth a prima facie case of an ADA violation.

Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182.  Plaintiff contends that the fee notice provided "fails to inform blind or sight-impaired users of the presence of a fee for usage, . . . depriving blind or sight-impaired people of the opportunity to independently engage in financial transactions on the same terms as sighted people."  Compl. ¶ 51.  In essence, plaintiff alleges that the fee notice was inadequate under the ADA because it prevented him from making the same informed decision about whether to use the ATM as sighted persons.

**A.     Standing**

Plaintiff must have standing to bring a claim under the ADA.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  The constitutional minimum of standing has three elements.

7

<u>Id.</u>  First, the plaintiff must have suffered a "concrete and particularized" and "actual or imminent" injury-in-fact of a legally protected interest.  <u>Id.</u>  Second, there must be a causal connection between the plaintiff's injury and the defendant's conduct.  <u>Id.</u>  Finally, it must be likely that the injury will be redressed by a favorable decision.  <u>Id.</u> at 561.  Since the plaintiff is the party invoking federal jurisdiction, he bears the burden of establishing the three elements of standing.  <u>Id.</u>

Before beginning an inquiry into the injury-in-fact element, I acknowledge that "[u]nder the section of the ADA prohibiting discrimination in public accommodations, private plaintiffs may not obtain monetary damages.  Preventative relief, including an injunction or restraining order, is the only remedy."  <u>Solivan v. Valley Hous. Dev. Corp.</u>, No. 08-2722, 2009 WL 3763920, at *8 (E.D. Pa. Nov. 9, 2009).  Since the sole remedy available under the ADA is injunctive relief, plaintiff's request for money damages is improper.  Dkt. No. 3 at ECF p. 15.  I will construe plaintiff's request for "any other relief," <u>id.</u>, as seeking an injunction.

Plaintiff contends that he has sufficiently alleged an injury-in-fact because he suffered an actual injury.  Dkt. No. 15 at ECF p. 6.  I disagree.  Because the remedy for an ADA violation is injunctive relief, in an inquiry into the injury-in-fact element of standing courts look beyond the alleged past violation and consider the possibility of future violations.  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."  <u>O'Shea v. Littleton</u>, 414 U.S. 488, 495-96 (1974).  To determine whether plaintiff has sufficiently alleged an injury-in-fact, I must consider whether he has alleged that he is likely to return to the place of the alleged

8

ADA violation.[5]  <u>Disabled Patriots</u>, 2008 WL 4416459 at *3.  Likelihood of return is determined

by looking at four factors: (1) plaintiff's proximity to the defendant's place of public

accommodation; (2) plaintiff's past patronage; (3) definitiveness of plaintiff's plan to return; and

(4) plaintiff's frequency of nearby travel.  <u>Id.</u>

   First, turning to proximity, if a plaintiff lives far from the defendant's accommodation, he

or she is unlikely to return to and experience future harm at that location.  It has been held that a

distance of more than 100 miles clearly fails to satisfy the proximity element.  <u>Disabled Patriots</u>,

2008 WL 4416459 at *4.  The proximity standard is not clear-cut and courts consider the type of

accommodation and whether it caters to travelers.  <u>Id.</u>; <u>see also</u> <u>Access 4 All, Inc. v. 539 Absecon</u>

<u>Blvd., L.L.C.</u>, No. 05-5624, 2006 WL 1804578, at *3 (D.N.J. June 26, 2006).  For instance, it is

more likely that a plaintiff will travel many miles to use a hotel than to use a restaurant.  <u>Disabled</u>

<u>Patriots</u>, 2008 WL 4416459 at *4.  In this case, the plaintiff lives over fifty miles from

defendant's ATM while his own bank is located within three miles of his house.  Def.'s Mot. to

Dismiss at 10.  Without more, plaintiff's proximity to the ATM in question does not clearly

establish a likely intent to return.

   Second, it is not evident from the complaint that plaintiff has visited the ATM more than

---

   [5]  Plaintiff asserts that the cases defendant uses to support its inquiry into plaintiff's likelihood of returning involve only "tester" claims and thus are not relevant here, where the plaintiff actually used the ATM and was not simply examining the ATM to record possible violations.  Dkt. No. 15 at ECF p. 6-7.  A tester "personally visits the public accommodation and tests the barriers to access to determine whether and to what extent they are illegal," takes legal action to enjoin defendants and then returns to the location to ensure compliance with the injunction.  <u>Disabled Patriots of Am., Inc. v. City of Trenton</u>, No. 07-CV-3165, 2008 WL 4416459, at *1 (D.N.J. Sept. 24, 2008).  In <u>Disabled Patriots</u>, cited by defendant, the plaintiff bringing ADA alleged that she was both a visitor with a personal desire to visit the public accommodations at issue and a "tester."  <u>Id.</u>  The Court carefully acknowledged that it was addressing <em>individual</em> and not tester standing and applied the full four-factor test of likelihood of plaintiff's return and.  <u>Id.</u> at *3 n.2.  Thus, the test of likelihood of plaintiff's return should be applied here in the discussion of plaintiff's individual standing.

once.  When a plaintiff has visited a public accommodation only once his lack of past patronage negates the possibility of future injury unless he can show a business or familial connection to the location.  Disabled Patriots, 2008 WL 4416459 at *5.  In this case plaintiff has not alleged any connections to the location of defendant's ATM.

Third, plaintiff has not alleged any facts to evidence a definitive plan to return.  Finally, plaintiff fails to plead any facts showing his frequency of travel in the area of the ATM. Considering all of these factors, I find that plaintiff's complaint does not sufficiently allege an injury-in-fact to establish that he has standing.  At the pleading stage, it is not in the province of the judge to decide the credibility of the plaintiff's stated intent to return.  Brown v. Showboat Atlantic City Propco, LLC, No. 08-5145, 2009 WL 690625, at *2 (D.N.J. Mar. 11, 2009). Dismissal is appropriate, however, where, as here, plaintiff makes no allegations to support a finding of an intent to return.  Because I find that plaintiff's allegations are insufficient to satisfy the injury-in-fact requirement, I will dismiss his claim under the ADA for lack of standing and need not consider whether he has sufficiently alleged a causal connection or a redressable injury.

### B.    Prima Facie Case

Even assuming that plaintiff can amend his complaint to establish standing, his complaint will still fail unless he has pled sufficient facts to set forth a prima facie case of discrimination under the ADA.  Plaintiff must show: (1) discrimination on the basis of disability; (2) in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by any person who owns or operates a place of public

accommodation.[6]  Harty v. Burlington Coat Factory of Pa., L.L.C., No. 11-01923, 2011 WL
2415169, at *9 (E.D.Pa. June 16, 2011).  Defendant argues that plaintiff has not established the
second element of his prima facie case because "[a]lthough he complains that he did not receive
proper on-machine notice of the $2.00 fee, plaintiff does not allege that he was unaware of the fee
before he completed his ATM transaction or that he was unable to use the ATM."  Dkt. No. 16 at
ECF p. 3 (emphasis omitted).

A plaintiff is limited to claims regarding violations relating to his particular disability.
Harty, 2011 WL 2415169, at *10.  As such, plaintiff cannot prevail on his claim on the grounds
that some blind consumers would be unable to read even the on-screen fee notice and would thus
have no notice or would be prevented from using the ATM completely.  See, e.g., Compl. ¶¶ 51
(alleging that the notice was insufficient to inform blind or sight-impaired users of the fee), 52
(alleging that the use of on-screen text to provide notice and the lack of voice or braille notice
targeted blind and sight-impaired persons).  With respect to his own alleged visual impairment,
plaintiff asserts that it prevented him from reading the on-machine notice and thus he was unable
to make the same informed decision about whether to use the ATM as would a person without his
alleged disability.  Id. ¶ 56.  Plaintiff does not contend, however, that he was unable to complete
his transaction because of his alleged disability.  In order to conduct his transaction, plaintiff must
have been able to navigate the ATM's on-screen prompts, including any on-screen fee notice.[7]

---

[6]        For purposes of its motion to dismiss, defendant does not dispute plaintiff's disability, defendant's
ownership of the ATM or that the ATM is a place of public accommodation.

[7]        Indeed, plaintiff alleges that there was no voice technology available to assist visually impaired
users at the ATM in question.  Compl. ¶ 55; Pl.'s Answer to Mot. to Dismiss at ECF p. 3.

In <u>Camarillo v. Carrols Corp.</u>, 518 F.3d 153 (2d Cir. 2008), the legally-blind plaintiff brought a claim under the ADA against fast-food restaurants who served the plaintiff but had not provided her with a large-print copy of the menu or read the menu aloud to her.  The Court vacated the District Court's dismissal of the plaintiff's claims and held that the plaintiff stated a claim that she was denied the "full and equal enjoyment" of defendants' services.  <u>Id.</u> at 157.  The Court reasoned, "Camarillo cannot experience 'full and equal enjoyment' of defendants' services if she is unable to access the list of the services available to her."  <u>Id.</u>  The present case, however, can be distinguished from <u>Camarillo</u>.  In <u>Camarillo</u>, the defendants did not provide any means to ensure effective communication of their menu options.  Here, by contrast, plaintiff has not alleged that no on-screen notice of the ATM fee was provided or that he was unable to complete a transaction at the ATM in question.  His allegations, while not a model of clarity, do not include a claim that he was entirely uniformed of the fee when he competed his transaction.

To survive a motion to dismiss, the plaintiff must have alleged sufficient facts to show that he has a "plausible claim for relief."  <u>Iqbal</u>, 129 S. Ct. at 1950.  In this case, plaintiff can state a "plausible claim for relief" under the ADA only by contending either that he had no notice of the fee and was thus prevented from making the same informed decision as sighted users or that he was unable to complete his transaction.  This he has not done.  Thus, plaintiff has not shown that he was deprived of the "full and equal enjoyment" of defendant's ATM, as required to state a claim under the ADA.

Therefore, I will also dismiss plaintiff's claim that the defendant violated the ADA.  I will grant leave to amend plaintiff's ADA claim to the extent that he can set forth sufficient allegations to meet the injury-in-fact requirement to establish standing and can allege sufficient facts to show

12

that he had no notice of the ATM fee or was unable to complete his transaction.

An appropriate Order follows.